✍ JS 44 (Rev. 3/99)          CIVIL COVER SHEET          APPENDIX B

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFF

Aberdeen Claims Administration, Inc., Trustee for Aberdeen Claims Trust and Aberdeen Claims Trust II.

### DEFENDANT

Satyam Computer Services Limited, et al.

(b) County of Residence of First Listed Plaintiff   Philadelphia County, PA
        (EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Chester County, PA
        (IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorneys (Firm Name, Address, and Telephone Number)
Keith R. Dutill, Esquire
Stradley Ronon Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103
(215) 564-8000 telephone
(215) 564-8120 facsimile (see list of additional counsel)

Attorneys (If Known)

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff

☐ 2   U.S. Government Defendant

☒ 3   Federal Question (U.S. Government Not a Party)

☐ 4   Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant)

| | P | DEF | | P | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 1 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury– | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |     Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal of | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |     Liability | ☐ 365 Personal Injury – |     of Property 21 USC |     28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |     Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
|     & Enforcement of |     Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced |
|     Judgment | ☐ 330 Federal Employers' |     Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights |     and Corrupt Organi- |
| ☐ 151 Medicare Act |     Liability |     Liability | ☐ 660 Occupational | ☐ 830 Patent |     zations |
| ☐ 152 Recovery of Defaulted | ☐ 340 Marine | **PERSONAL PROPERTY** |     Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
|     Student Loans | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☒ 850 Securities/Commodities/ |
|     (Excl. Veterans) |     Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** |     Exchange |
| ☐ 153 Recovery of Overpayment | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge |
|     of Veteran's Benefits | ☐ 355 Motor Vehicle |     Property Damage |     Act | ☐ 862 Black Lung (923) |     12 USC 3410 |
| ☐ 160 Stockholders' Suits |     Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIW C/DIW W(405(g)) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury |     Product Liability | | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting | ☐ 865 RSI (405(g)) |     Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** |     & Disclosure Act | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAXSUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment |     Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Informa- |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ |     Habeas Corpus: | |     or Defendant) |     tion Act |
| ☐ 240 Torts to Land |     Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. | | ☐ 900 Appeal of Fee Deter- |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty |     Security Act | ☐ 871 IRS– Third Party |     mination Under |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | |     26 USC 7609 |     Equal Access to |
| | | ☐ 550 Civil Rights | | |     Justice |
| | | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | | | | |     State Statutes |
| | | | | | ☐ 890 Other Statutory Actions |

(PLACE AN "X" IN ONE BOX ONLY)

### V. ORIGIN

☒ 1   Original Proceeding

☐ 2   Removed from State Court

☐ 3   Remanded from Appellate Court

☐ 4   Reinstated or Reopened

☐ 5   Transferred from another district (specify)

☐ 6   Multidistrict Litigation

☐ 7   Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION (Cite the U.S. Civil Status under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Securities Echange Act, 13 USC §§ 78, 78t; violation of securities laws and common law claims

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $: Exceeds $60 million

CHECK YES only if demanded JURY DEMAND: ☒ Yes   ☐ No

### VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE   N/A        DOCKET NUMBER

DATE   11/13/09        SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT #_____     AMOUNT_____     APPLYING IFP_____     JUDGE_____     MAG. JUDGE_____

## ATTACHMENT TO CIVIL COVER SHEET

**I. Plaintiff**

**(c)  Attorneys (Firm Name, Address and Telephone Number)**

Keith R. Dutill
William E. Mahoney, Jr.
Neal R. Troum
Heather M. Tashman
Joseph T. Kelleher
Stradley, Ronon, Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA  19103-7098
(215) 564-8000
(215) 564-8120 (facsimile)

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA – DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:   1735 Market Street, 32nd Floor, Philadelphia, PA  19103

Address of Defendant:   See Attached

Place of Accident, Incident or Transaction:   United States and India
_(Use Reverse Side For Additional Space)_

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes ☐   No ☒
Does this case involve multidistrict litigation possibilities?      Yes ☒   No ☐
_RELATED CASE, IF ANY:_

Case Number:   N/A          Judge _____          Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1.   Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                        Yes ☐   No ☒

2.   Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
                                        Yes ☐   No ☒

3.   Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
                                        Yes ☐   No ☒

4.   Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
                                        Yes ☐   No ☒

CIVIL:  (Place ☐ in ONE CATEGORY ONLY)

A.   _Federal Question Cases:_

1.   ☐   Indemnity Contract, Marine Contract, and All Other Contracts
2.   ☐   FELA
3.   ☐   Jones Act-Personal Injury
4.   ☐   Antitrust
5.   ☐   Patent
6.   ☐   Labor-Management Relations
7.   ☐   Civil Rights
8.   ☐   Habeas Corpus
9.   ☒   Securities Act(s) Cases
10.  ☐   Social Security Review Cases
11.  ☐   All other Federal Question Cases
          (Please specify)

B.   _Diversity Jurisdiction Cases:_

1.   ☐   Insurance Contract and Other Contracts
2.   ☐   Airplane Personal Injury
3.   ☐   Assault, Defamation
4.   ☐   Marine Personal Injury
5.   ☐   Motor Vehicle Personal Injury
6.   ☐   Other Personal Injury (Please specify)
7.   ☐   Products Liability
8.   ☐   Products Liability – Asbestos
9.   ☐   All other Diversity Cases
          (Please specify)

## ARBITRATION CERTIFICATION
_(Check appropriate Category)_

I,   Keith R. Dutill          , counsel of record do hereby certify:

☒   Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil case exceed the sum of $150,000.00 exclusive of interest and costs;

☐   Relief other than monetary damages is sought.

DATE:   11/13/09          _X_____          PA 46387
                                Attorney-at-Law                Attorney I.D.#

**NOTE:**  A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:   11/13/09          _X_____          PA 46387
                                Attorney-at-Law                Attorney I.D.#

CIV. 609 (6/08)

**<u>ATTACHMENT TO DESIGNATION FORM</u>**

**Names and Addresses of Defendants:**

(1)   Satyam Computer Services Limited
      415 McFarlan Road, Suite 106
      Kennett Square, PA

(2)   B. Ramalinga Raju
      Cenral Prison, Chanchalguda
      Hyderabad, State of Andhra  Pradesh
      India

(3)   B. Rama Raju
      Central Prison, Chanchalguda
      Hyderabad, State of Andhra Pradesh
      India

(4)   Srinivas Vadlamani
      CT Corporation
      111 8th Avenue
      New York, New York  10011

(5)   PriceWaterhouseCoopers International Limited
      300 Madison Avenue
      New York, NY 10017
      and
      1177 Avenue of the Americas
      New York, NY  10036

(6)   Price Waterhouse
      8-2-293/82/A/1131A
      Road No. 36
      Jubilee Hills, Hyderabad – 500082
      State of Andhra Pradesh,
      India

(7)   PriceWaterhouseCoopers Private Limited
      Plot No. Y – 14
      Block EP Sector V
      Salt Lake Electronic Complex
      Bidhan Nagar, Kolkata – 700091
      West Bengal
      India

(8)  Lovelock & Lewes
     Road No. 36
     Jubilee Hills, Hyderabad – 500082
     State of Andhra Pradesh
     India

(9)  S. Gopalakrishnan
     Central Prison
     Chanchalguda
     Hyderabad, State of Andhra Pradesh
     India

(10) Srinivas Talluri
     Central Prison, Chanchalguda,
     Hyderabad, State of Andhra Pradesh
     India.

(11) Maytas Infra Limited
     6-3-1186/5/A
     III Floor, Amogh Plaza
     Begumpet, Hyderabad – 500016
     State of Andhra Pradesh
     India

(12) Maytas Properties
     6-3-1186/5/A
     III Floor, Amogh Plaza
     Begumpet, Hyderabad – 500016
     State of Andhra Pradesh
     India

(13) Byrraju Teja Raju
     Plot No. 1242, Road No. 62
     Jubilee Hills, Hyderabad
     State of Andhra Pradesh
     India

(14) Byrraju Rama Raju Jr.
     6-3-1186/5/A
     III Floor, Amogh Plaza
     Begumpet, Hyderabad – 50016
     State of Andhra Pradesh
     India

L # 1028152 v.1

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Aberdeen Claims Administration, Inc., Trustee for Aberdeen Claims Trust and Aberdeen Claims Trust II,<br>Plaintiff, | : | CIVIL ACTION |
| v. | : : | |
| Satyam Computer Services Limited, et al.<br>Defendant. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( X )

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( )

| | | |
|---|---|---|
| 11/13/09 | | Aberdeen Claims Administration, Inc. |
| Date | Attorney-at-Law | Attorney for Plaintiff |
| (215) 564-8000 | (215) 564-8120 | kdutill@stradley.com |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ABERDEEN CLAIMS ADMINISTRATION, INC., Trustee for ABERDEEN CLAIMS TRUST and ABERDEEN CLAIMS TRUST II,** | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| **Plaintiff,** | : Civil Action No. _____ |
| | : |
| **v.** | : |
| | : |
| **SATYAM COMPUTER SERVICES LIMITED, B. RAMALINGA RAJU, B. RAMA RAJU, SRINIVAS VADLAMANI, PRICEWATERHOUSECOOPERS INTERNATIONAL LIMITED, PRICE WATERHOUSE, PRICEWATERHOUSECOOPERS PRIVATE LIMITED, LOVELOCK & LEWES, S. GOPALAKRISHNAN, SRINIVAL TALLURI, MAYTAS INFRA LIMITED, MAYTAS PROPERTIES, BYRRAJU TEJA RAJU, and BYRRAJU RAMA RAJU JR.,** | : Jury Trial Demanded |
| | : |
| **Defendants.** | : |
| | : |

## <u>COMPLAINT</u>

Keith R. Dutill (PA 46387)
William E. Mahoney (PA 67407)
Neal R. Troum (PA 94572)
Heather M. Tashman (PA 91004)
Joseph T. Kelleher (PA 202786)
Stradley, Ronon, Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098
(215) 564-8000
(215) 564-8120 (facsimile)

Attorneys for Plaintiff, Aberdeen Claims
Administration, Inc., Trustee for Aberdeen Claims
Trust and Aberdeen Claims Trust II

## Table of Contents

I.      The Nature of the Action ................................................................................................1

II.     Jurisdiction and Venue.....................................................................................................5

III.    The Parties ........................................................................................................................6

        A.      The Plaintiff .........................................................................................................6

        B.      The Defendants ...................................................................................................10

                1.      The Satyam Defendants ..........................................................................10

                2.      The PwC Defendants ..............................................................................11

                3.      The Maytas Defendants ..........................................................................17

IV.     The Fraud.........................................................................................................................17

        A.      The $1 Billion Deception ...................................................................................17

        B.      The PwC Blessing...............................................................................................45

        C.      The Theft by the Insiders ...................................................................................49

V.      The Public Confession and the Indictments....................................................................54

VI.     The Sudden Collapse in the Price of Satyam Securities .................................................56

VII.    Additional Allegations Relating to Scienter ...................................................................56

VIII.   Additional Allegations Relating to Loss Causation.........................................................58

IX.     Additional Allegations Relating to Reliance ...................................................................59

The Claims ....................................................................................................................................60

Plaintiff, Aberdeen Claims Administration, Inc., Trustee for Aberdeen Claims Trust and Aberdeen Claims Trust II, by and through its undersigned counsel, brings this civil action and avers as follows:

## I.   NATURE OF THE ACTION

1.     This is an action to recover losses arising out of a massive fraud at Satyam Computer Services Limited ("Satyam") involving thousands of forged invoices and contracts, dual sets of account books, phony bank statements, and public financial disclosures filed with the United States Securities and Exchange Commission ("SEC") that overstated assets by over $1 billion.

2.     B. Ramalinga Raju ("Ramalinga Raju"), Satyam's Chairman, founder, and one of the chief architects of the fraud, has confessed to the fraud publicly and in writing.  He described the protracted and sweeping plot to conceal the truth over many years as "like riding a tiger, not knowing how to get off without being eaten."  (A copy of the written confession of Satyam's Chairman is attached hereto as Exhibit A and incorporated herein by reference.)

3.     Satyam is an information technology provider which, prior to the disclosure of this fraud, maintained a global client list that included over a third of the companies comprising the Fortune 500, with market capitalization of nearly $2.5 billion.

4.     Satyam's common stock traded in India on the Bombay Stock Exchange ("the Bombay Exchange") and the National Stock Exchange ("the National Exchange"), and its American Depository Receipts ("ADRs") traded on the New York Stock Exchange ("NYSE").

5.     With a United States headquarters in Santa Clara, California, Satyam maintains offices throughout the United States, including in Kennett Square, Pennsylvania.  Most of Satyam's income is derived from sources within the United States.

6.    Defendants herein are:

(a)    Satyam,

(b)    Ramalinga Raju,

(c)    B. Rama Raju ("Rama Raju"),

(d)    Srinivas Vadlamani ("Vadlamani"),

(e)    PricewaterhouseCoopers International Limited ("PwCIL"),

(f)    Price Waterhouse,

(g)    PricewaterhouseCoopers Private Limited ("PwC Pvt. Ltd."),

(h)    Lovelock & Lewes,

(i)    S. Gopalakrishnan ("Gopalakrishnan"),

(j)    Srinival Talluri ("Talluri"),

(k)    Maytas Infra Limited ("Maytas Infra"),

(l)    Maytas Properties ("Maytas Properties"),

(m)    Byrraju Teja Raju ("Teja Raju"), and

(n)    Byrraju Rama Raju Jr. ("Rama Raju Jr.").

7.    Rama Raju and Vadlamani were Satyam's Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO"), respectively.  PwC (defined below) provided Satyam with auditing and consulting services.  Gopalakrishnan was PwC India's chief relationship officer, and Talluri was its engagement leader.  Teja Raju and Rama Raju Jr., Ramalinga Raju's son's, were the Vice Chairmen of Maytas Infra and Maytas Properties, respectively.

8.    As set forth at greater length below, Defendants are responsible for the issuance of materially false and misleading statements concerning Satyam's financial condition and accounting practices over a period of at least eight years, and they engaged in a concerted and long-running fraudulent scheme to pillage Satyam while maintaining the façade that Satyam was a highly successful company in robust financial health.

9.      At core, Defendants' scheme involved creating and reporting hundreds of millions of dollars in non-existent work in which Satyam was reportedly engaged, which had the intended effect of falsely making it appear that Satyam was more successful than it really was. PwC India possessed the documents that showed Satyam's true financial condition, and its active participation in the fraud was thus essential.  Maytas Infra and Maytas Properties were essential partners in the fraudulent scheme and recipients of untold sums of money misappropriated from Satyam; they were also among the tools and instrumentalities employed to perpetuate the fraud.

10.      By implementation of this fraudulent scheme, Satyam's assets were intentionally overstated by more than $1 billion.  This caused investors, in reasonable reliance on Defendants' misrepresentations as to the financial condition of Satyam, to purchase Satyam's common stock and ADRs at artificially inflated prices.

11.      This house of cards fell on January 7, 2009.  On that date, Ramalinga Raju admitted that Satyam had engaged in a massive fraud and that over 90% of Satyam's publicly reported assets were fictitious.

12.      Immediately upon Ramalinga Raju's admission of the fraud that had been committed, Satyam's common stock trading on the Bombay Exchange and National Exchange lost almost 77% of its value.  In the United States, shares of Satyam ADRs fell approximately 87% in market action prior to the opening of trading on the NYSE on January 7, 2009.

13.      The Securities and Exchange Board of India ("SEBI") and the Indian Central Bureau of Investigation ("CBI") launched an investigation into Satyam's finances, as well as the activities of its senior officers and directors.  Five of the individual Defendants herein – Ramalinga Raju, Rama Raju, Vadlamani, Gopalakrishnan, and Talluri – have been arrested and indicted for their roles in this fraud.

14.     The following investors (the "Investors") purchased Satyam common stock on the Bombay Exchange and/or the National Exchange, and/or ADRs on the NYSE:

(a)     Aberdeen EAFE plus SRI Fund, a series of Aberdeen Delaware Business Trust,

(b)     Aberdeen EAFE plus Ethical Fund, a series of Aberdeen Delaware Business Trust,

(c)     City of Albany Employees Pension Trust,

(d)     Franciscan Sisters of Chicago,

(e)     The City of New York Deferred Compensation Plan,

(f)     Thrivent Partner Emerging Markets Portfolio, a series of Thrivent Series Fund, Inc.,

(g)     Aberdeen Global – Responsible World Equity Fund,

(h)     Aberdeen ICVC – Ethical World Fund,

(i)     Mackenzie Financial Corporation – Mackenzie Universal Sustainable Opportunities Capital Class,

(j)     Aberdeen Canada – Socially Responsible International Fund,

(k)     Aberdeen Canada – Socially Responsible Global Fund,

(l)     NCB Capital Company,

(m)     Raiffeisen Kapitalanlage – Gesellsc mbh R 77-Fonds Segment B,

(n)     First Trust/Aberdeen Emerging Opportunity Fund,

(o)     Aberdeen Asia Pacific excluding Japan Fund, a series of Aberdeen Delaware Business Trust,

(p)     Aberdeen Emerging Markets Equity Fund, a series of Aberdeen Delaware Business Trust,

(q)     Aberdeen Asia Pacific including Japan Fund, a series of Aberdeen Delaware Business Trust,

(r)     Halliburton Company Employee Benefit Master Trust, and

(s)     Thrivent Partner Worldwide Allocation Fund, a series of Thrivent Mutual Funds.

15.    The Investors have suffered injury on account of Defendants' actionable behavior.  Specifically, the Investors purchased Satyam securities at prices that were artificially inflated due to Defendants' fraud.  When this fraud was uncovered, the value of their investments plummeted.  The Investors sold their Satyam securities following the disclosure of the fraud, after the value of those securities had plummeted, and they suffered injury as a result.

16.    Each Investor has, by means of an Assignment of Claims and Power of Attorney, assigned, transferred, and set over to Aberdeen Claims Trust or Aberdeen Claims Trust II, for purposes of collection, all rights, title, and interest of the Investor in the Investor's claims, demands, and causes of action relating to the common stock and/or ADRs of Satyam; and has appointed Aberdeen Claims Trust or Aberdeen Claims Trust II as its true and lawful attorney in fact.

17.    Aberdeen Claims Administration, Inc., as trustee for Aberdeen Claims Trust I and Aberdeen Claims Trust II, brings this action to recover on account of the injuries suffered by the Investors.

## II.    JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, in that this action arises under the laws of the United States; pursuant to 28 U.S.C. § 1337, in that this action arises under an Act of Congress regulating commerce; and pursuant to 15 U.S.C. § 78aa, in that this action alleges violations of Chapter 2B of Title 15 of the United States Code and rules promulgated thereunder.

19.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims, which are so related to claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

20.     Venue is proper in the Eastern District of Pennsylvania pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b), in that Satyam maintains offices in this District, Satyam transacted business in this District at all relevant times, and the actionable conduct described herein, including the dissemination of false public statements, occurred in this District.

21.     In connection with the acts and omissions alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the facilities of the national securities markets.

22.     Defendants' acts, as described herein, were directed towards this District and the United States.  Defendants participated in a scheme involving the submission of fraudulent reports in the United States, specifically intending to artificially inflate the value of securities traded on United States markets and abroad.

III.    **THE PARTIES**

A.      **The Plaintiff**

23.     Plaintiff, Aberdeen Claims Administration, Inc., is Trustee for Aberdeen Claims Trust and Aberdeen Claims Trust II, trusts formed and existing under the laws of the Commonwealth of Pennsylvania, with their situs in Philadelphia County, Pennsylvania.

24.     Aberdeen Claims Administration, Inc., is a Delaware corporation with its principal place of business in Philadelphia County, Pennsylvania.

25.     Aberdeen Claims Trust and Aberdeen Claims Trust II are the assignees of the rights of the Investors to pursue the claims at issue in this case, as described at greater length herein.

26.     The Investors purchased Satyam common stock on the Bombay Exchange and/or the National Exchange, and/or ADRs on the NYSE in the United States.

6

27.    The Investors' purchases and sales of Satyam securities are summarized

below:

(a)    Aberdeen EAFE plus SRI Fund, a series of Aberdeen Delaware
       Business Trust, purchased a total of 21,800 Satyam ADRs on or
       about January 29 and 30, 2007, April 3, 2007, and July 1, 2008.  It
       sold most of these ADRs on or about January 7 and 9, 2009, after
       the public disclosure of the fraud.

(b)    Aberdeen EAFE plus Ethical Fund, a series of Aberdeen Delaware
       Business Trust, purchased a total of 33,600 Satyam ADRs on or
       about January 29 and 30, 2007, and April 3, 2007.  It sold most of
       these ADRs on or about January 7 and 9, 2009, after the public
       disclosure of the fraud.

(c)    City of Albany Employees Pension Trust purchased 11,900
       Satyam ADRs on or about January 31, 2007.  It sold them on or
       about January 12, 2009, after the public disclosure of the fraud.

(d)    Franciscan Sisters of Chicago purchased a total of 34,600 Satyam
       ADRs on or about April 3 and 25, 2003, May 19, 2006, January
       31, 2007, and December 2, 2008.  It sold most of these ADRs on or
       about January 12, 2009, after the public disclosure of the fraud.

(e)    The City of New York Deferred Compensation Plan purchased
       70,200 Satyam ADRs on or about March 5, 2007.  It sold them on
       or about January 7 and 9, 2009, after the public disclosure of the
       fraud.

(f)    Thrivent Partner Emerging Markets Portfolio, a series of Thrivent
       Series Fund, Inc., purchased 15,500 Satyam ADRs on or about
       April 30, 2008.  It sold them on or about January 7 and 9, 2009,
       after the public disclosure of the fraud.

(g)    Aberdeen Global – Responsible World Equity Fund purchased
       75,400 Satyam ADRs on or about November 5 and 19, 2007, and
       April 11, October 20, and November 20, 2008.  It sold them on or
       about January 7 and 9, 2009, after the public disclosure of the
       fraud.

(h)    Aberdeen ICVC – Ethical World Fund purchased 253,800 Satyam
       ADRs on or about February 1 and 2, March 8, July 11, and
       October 2, 2007, and June 3 and December 5, 2008.  It sold them
       on or about January 7 and 9, 2009, after the public disclosure of
       the fraud.

7

(i)     Mackenzie Financial Corporation – Mackenzie Universal Sustainable Opportunities Capital Class purchased 16,600 Satyam ADRs on or about February 1 and 2, March 8, and October 2, 2007.  It sold them on or about January 7 and 9, 2009, after the public disclosure of the fraud.

(j)     Aberdeen Canada – Socially Responsible International Fund purchased 32,100 Satyam ADRs on or about February 1 and 2, 2007.  It sold them on or about January 7 and 9, 2009, after the public disclosure of the fraud.

(k)     Aberdeen Canada – Socially Responsible Global Fund purchased 43,200 Satyam ADRs on or about February 1 and 2, and March 8, 2007, and January 7 and December 5, 2008.  It sold them on or about January 7 and 9, 2009, after the public disclosure of the fraud.

(l)     NCB Capital Company purchased 51,800 Satyam ADRs on or about July 15 and 25, August 25, and October 7, 2008.  It sold them on or about January 7 and 9, 2009, after the public disclosure of the fraud.

(m)     Raiffeisen Kapitalanlage – Gesellsc mbh R 77-Fonds Segment B purchased 27,300 Satyam ADRs on or about March 17, 2008.  It sold them on or about January 7 and 9, 2009, after the public disclosure of the fraud.

(n)     First Trust/Aberdeen Emerging Opportunity Fund purchased 74,000 shares of Satyam common stock on or about November 24, 2006, and August 10, 2007.  It sold them on or about January 7 and 9, 2009, after the public disclosure of the fraud.

(o)     Aberdeen Asia Pacific excluding Japan Fund, a series of Aberdeen Delaware Business Trust, purchased 335,000 shares of Satyam common stock on or about October 4, 2005, November 2, 2005, February 1, 2006, June 9, 2006, July 3, 2006, August 1, 2006, November 13, 2006, January 22 and 24, 2007, March 6 and 7, 2007, October 3, 2007, November 14, 2007, and January 18, 2008.  It sold them on or about January 7, 2009, after the public disclosure of the fraud.

(p)     Aberdeen Emerging Markets Equity Fund, a series of Aberdeen Delaware Business Trust, purchased 4,447,000 shares of Satyam common stock on or about October 4, 2005, December 2, 2005, January 3, 2006, February 1, 2006, June 1, 2006, July 3, 2007, August 1, 2006, October 3, 2006, November 1, 2006, January 3, 2007, April 2 and 10, 2007, February 5 and 6, 2008, April 1 and 3,

2008, September 20, 2008, and October 3 and 15, 2008.  It sold them on or about January 7, 2009, after the public disclosure of the fraud.

(q)     Aberdeen Asia Pacific including Japan Fund, a series of Aberdeen Delaware Business Trust, purchased 211,710 shares of Satyam common stock on or about March 6, 2006, June 1, 2006, October 26, 2006, February 1, 2007, October 4, 2007, November 6, 2007, January 2, 8, and 18, 2008, March 3, 2008, and September 25, 2008.  It sold them on or about January 7, 2009, after the public disclosure of the fraud.

(r)     Halliburton Company Employee Benefit Master Trust purchased 230,929 shares of Satyam common stock on or about August 9, 10, and 24, 2007, and September 30, 2008.  It sold them on or about January 7, 2009, after the public disclosure of the fraud.

(s)     Thrivent Partner Worldwide Allocation Fund, a series of Thrivent Mutual Funds, purchased 54,000 shares of Satyam common stock on or about November 14, 2008, and December 4 and 10, 2008.  It sold them on or about January 7, 2009, after the public disclosure of the fraud.

28.     The total of the Investors' losses, for which recovery is sought in this case, exceeds $60 million.  These losses were proximately caused by Defendants' misrepresentations, as the Investors purchased Satyam securities at artificially inflated market prices and sold the securities after the price of Satyam securities plunged following disclosure of the fraud.

29.     All Investors who purchased Satyam common stock on Indian exchanges reside in the United States.

30.     Of the nineteen Investors, thirteen reside in the United States; of those thirteen, six reside in this District and the other seven are spread over five states.

31.     All of the Investors employed investment advisors who bought and sold, and/or oversaw the purchase and sale of, Satyam securities on their behalf.

32.     The investment advisor who bought Satyam securities on behalf of thirteen of the nineteen Investors is located in the Eastern District of Pennsylvania.

33.     The Investors' investment advisors relied on financial statements and related information contained within Satyam's SEC filings in the United States, discussed herein, in making investment decisions respecting Satyam common stock and/or Satyam ADRs.

**B.     The Defendants**

**1.     The Satyam Defendants**

34.     Satyam is a limited liability company organized under the laws of the Republic of India pursuant to the provisions of the Indian Companies Act.  Its primary business office is located in Hyderabad, India, and it has offices throughout the United States.  Satyam's agent for service in the United States is CT Corporation System, 111 8th Avenue, New York, New York, 10011.

35.     Satyam provides outsourced back office infrastructure services.  Prior to its collapse, it had tens of thousands of employees and operated in sixty-six countries and throughout the United States, including in this District.

36.     Satyam provides services in the form of consulting, information technology, and computer outsourcing for some of the largest banks, manufacturers, healthcare companies, and media companies in the world.

37.     Prior to January 7, 2009, the date on which the fraud at issue was made public, Satyam had over 670 million shares outstanding, including over 130 million underlying shares that supported over 65 million Satyam ADRs traded in the United States on the NYSE.

38.     Ramalinga Raju served as Satyam's chairman until his resignation on January 7, 2009, when he disclosed that he had participated in a fraudulent scheme to inflate Satyam's assets by over $1 billion.

39.     Rama Raju is the younger brother of Ramalinga Raju and the former Managing Director and CEO of Satyam.  Rama Raju also resigned on January 7, 2009.

40.     Vadlamani served as Satyam's CFO until his resignation, again on January 7, 2009.  Vadlamani was responsible for overseeing the finances of Satyam and ensuring that its accounting complied with generally accepted accounting principles ("GAAP").  Vadlamani was a member of the Institute of Chartered Accountants of India.

41.     Ramalinga Raju, Rama Raju, Vadlamani, and Satyam are collectively referred to herein as "the Satyam Defendants."

### 2.     **The PwC Defendants**

#### a.     **PwCIL**

42.     PwCIL is a membership-based company with headquarters in the United Kingdom and approximately 800 employees throughout the world, including in the United States.

43.     PwCIL has an office in the United States in New York City.

44.     PwCIL member firms are unified and interconnected through membership in PwCIL.

45.     PwCIL and its member firms market themselves under the name "PricewaterhouseCoopers."

46.     PwCIL's primary activities include identifying market opportunities around the world, developing strategies to achieve market opportunities, promoting the "PricewaterhouseCoopers" brand around the world, and developing and working for the "consistent application of common risk and quality standards by member firms."

47.    PwCIL's main objectives, according to its Memorandum of Association,

include:

    (a)    providing guidance in relation to, and assisting in the coordination of, the management and governance of its member firms;

    (b)    developing, and promoting and assisting in the development of, common standards, principles, strategies, policies, objectives, plans, projects, programs, practices, and systems to be applied by its member firms in carrying out their business;

    (c)    promoting, monitoring, and assisting in the uniform application of common standards, principles, strategies, policies, objectives, plans, projects, programs, practices, and systems; and

    (c)    providing, or procuring the provision of, services to member firms, including service methodologies and tools, relationship management processes, know-how, training, quality assurance services, insurance, technology, management information, planning, and budgeting processes.

48.    PwCIL coordinates the foregoing activities.

49.    PwCIL carries out its objectives through a formal governance structure,

which includes:

    (a)    The Global Board, whose primary role is to ensure accountability, protect the PricewaterhouseCoopers network, and ensure effective governance;

    (b)    The Network Leadership Team, whose primary job is to set strategies and standards that the PricewaterhouseCoopers network firms must follow;

    (c)    The Strategy Council, whose primary role is to set strategies and ensure global alignment of PricewaterhouseCoopers network strategies; and

    (d)    The Network Executive Team, which reports to the Network Leadership Team on service and functional issues relating to the PricewaterhouseCoopers network.

50.    The Global Board, the Network Leadership Team, the Strategy Council,

and the Network Executive Team, in executing the foregoing activities and objectives, have a

direct involvement in the operation, management, policies, and procedures, among other things, of each PwCIL member firm throughout the world.

51.     PwCIL regularly conducts, and its member firms regularly participate in, practice groups, meetings, and training sessions that PwCIL provides in carrying out the above-referenced activities and objectives.

52.     Membership in PwCIL depends on each member firm's ability to comply with numerous risk and quality standards set forth and created by PwCIL.

53.     Each member firm must, to remain a member of PwCIL, sign an "annual compliance confirmation," which sets forth various risk management standards covering independence, ethics, business conduct, assurance, risk management, member firm governance, data protection, and privacy.

54.     In carrying out its activities and objectives, PwCIL rigorously controls its member firms in connection with firm culture, quality procedures, management of risk, and quality of work, among other things.

55.     PwCIL's "Assurance" practice conducts annual reviews of member firms to ensure compliance with global PricewaterhouseCoopers policies and procedures, including review of the performance of partners on selected engagements.

56.     PwCIL's Assurance practice also ensures that audit examinations are performed in accordance with GAAP, and that "financial statements are prepared in conformity with" GAAP.

57.     PwCIL, through its global Assurance practice, also serves to identify possible causes of existing deficiencies and risk in member firms, and it makes recommendations for improvement of member firms in these areas.

58.     Each PwCIL member firm is subject to the global Assurance practice review at least once every three years, but the review can take place more frequently if warranted.

59.     Accordingly, pursuant to its own protocol, PwCIL conducted at least one, and likely more than one, Assurance practice review of PwC India's audit examinations and GAAP compliance while the protracted fraud described herein was ongoing.

60.     PwCIL member firms are also subject to a global Code of Conduct promulgated by PwCIL.

61.     PwCIL provides a centralized global leadership for its member firms, setting strategies, policies, and standards for all the activities that PwCIL member firms are required to follow.

### b.     PwC India

62.     PwC Pvt. Ltd. and Lovelock & Lewes are Indian accounting firms which maintain a shared office with the address:  #8-2-293/82/A/1131 A, Road No. 36, Jubilee Hills, Hyderabad 500 082, India.

63.     Lovelock & Lewes is also known as "Price WaterhouseLovelock & Lewes," "Lovelock & LewesPrice Waterhouse," and "Lovelock & Lewes/Price Waterhouse."

64.     In addition to their common office in Hyderabad, PwC Pvt. Ltd. and Lovelock & Lewes maintain offices in the following cities throughout India:  Bangalore, Bhubaneswar, Chennai, Guragon, and Kolkata.  In each of these cities, the respective PwC Pvt. Ltd. and Lovelock & Lewes offices share the exact same address, telephone number, and fax number.

14

65.     Both PwC Pvt. Ltd. and Lovelock & Lewes hold themselves out to the public as "Price Waterhouse." Price Waterhouse is the entity that Satyam has publicly identified as its auditor, and the Satyam SEC filings discussed herein were signed by auditors on behalf of "Price Waterhouse."

66.     PwC Pvt. Ltd., Lovelock & Lewes, and Price Waterhouse have overlapping leadership. For example, Ramesh Rajan, who, upon Satyam's request, submitted Price Waterhouse's resignation as statutory auditors for Satyam, was also a partner in Lovelock & Lewes and the CEO of PwC Pvt. Ltd.

67.     PwC Pvt. Ltd., Lovelock & Lewes, and Price Waterhouse use each other's names interchangeably; hold themselves out to the public as a single, integrated entity; and act as alter egos of each other in connection with providing audit services throughout India, including the audits of Satyam. PwC Pvt. Ltd., Lovelock & Lewes, and Price Waterhouse are collectively referred to herein, as "PwC India."

68.     From at least 2001 through 2008, PwC India conducted audits of Satyam, provided consulting services to Satyam, prepared and certified financial statements which were incorporated into Satyam's filings with the SEC, and issued unqualified opinions with regard to Satyam's financial statements, also incorporated into Satyam's SEC filings, which were signed on behalf of "Price Waterhouse."

69.     Gopalakrishnan was PwC India's chief relationship officer and a partner in both Lovelock & Lewes and Price Waterhouse. Talluri was PwC's India's engagement leader and a partner in both Lovelock & Lewes and Price Waterhouse. Both were closely involved in PwC India's relationship with Satyam. Gopalakrishnan and Talluri were the individuals who

signed and certified Satyam's financial statements on behalf of "Price Waterhouse," which were

incorporated into Satyam's filings with the SEC, discussed further below.

70.     PwC India is a member of PwCIL and, as such, constitutes

PricewaterhouseCoopers' presence in India.

71.     On its global website (http://www.pwc.com/gx), PwCIL boasts: "No

matter where you're located, chances are there's a PwC office near you." The global site goes

on to list the various PwC India offices as "PwC's Office Locations in India."

72.     Through PwC India, PwCIL pursues its global strategies and objectives

and promotes the PricewaterhouseCoopers brand in India. PwCIL controls PwC India through

its centralized global leadership structure, described above, and it imposes standards, policies,

and practices by which PwC India must abide. Moreover, as a member of PwCIL, PwC India is

subject to PwCIL's Assurance practices. PwCIL thus scrutinizes and controls PwC India's

operations and performance, including its audit practices.

73.     By these means, among others, PwCIL exercises control over PwC India,

which acts as PwCIL's agent with authority to act on PwCIL's behalf in India. PwC India thus

provided its audit services to Satyam on the authority of, at the direction of, under the

supervision of, and/or for the benefit of PwCIL.

74.     PwCIL reacted swiftly to the revelation of the fraud. PwCIL's global

CEO, Sam DiPiazza, in discussing the embarrassment to PricewaterhouseCoopers caused by the

revelation of the Satyam fraud, publicly acknowledged: "When you have some participation in

the situation, as we did in this case as auditors, it's difficult." In defending the actions of the

individual auditors involved, DiPiazza remarked, "Our partners [i.e., PWC India] were clearly

misled." Additionally, PwCIL has represented Gopalakrishnan and Talluri in criminal

proceedings in India related to the fraud.

75.     PwCIL and PwC India are collectively referred to herein as "PwC."

**3.     The Maytas Defendants**

76.     "Maytas" is "Satyam" spelled backwards.

77.     Maytas Infra is a publicly held company with offices in Hyderabad, India.

78.     Maytas Infra is controlled by Ramalinga Raju, Teja Raju, Rama Raju Jr., and their family.

79.     Teja Raju is Ramalinga Raju's son and the Vice Chairman of Maytas Infra.

80.     Maytas Infra held a significant ownership stake in Satyam.

81.     Maytas Properties is also controlled by Ramalinga Raju, Teja Raju, Rama Raju Jr., and their family.

82.     Rama Raju Jr. is Ramalinga Raju's son and the Vice Chairman of Maytas Properties.

83.     Maytas Properties has significant real estate holdings in the Hyderabad area.

84.     Rama Raju Jr., Teja Raju, Maytas Infra, and Maytas Properties are referred to herein collectively as "the Maytas Defendants."

**IV.     THE FRAUD**

**A.     The $1 Billion Deception**

85.     For at least the last five years, the information made available to the public, including the Investors, with regard to Satyam's financial health demonstrated that it was a robust and healthy company.

86.     However, the picture painted in Satyam's regulatory submissions and press releases did not reflect the true financial condition of the company.

87.     Specifically, as noted in the criminal charge sheet against Ramalinga Raju, Rama Raju, Vadlamani, Golapakrishna, and Talluri, following their arrests in India, Defendants substantially and falsely inflated Satyam's revenues from sales for years.  The following is a comparison of Satyam's actual revenues from sales versus the amounts fraudulently misstated by Defendants in public filings in the United States for the five years preceding the disclosure of the fraud:

## Satyam Revenue from Sales[1]

| Period | Reported Revenues | Actual Revenues | Difference |
|---|---|---|---|
| Quarter Ending 06/30/2004 | Rs. 771.49 crore ($167.75 million USD) | Rs. 620.67 crore ($134.96 million USD) | Rs. 150.82 crore ($32.79 million USD) |
| Quarter Ending 09/30/2004 | Rs. 842.03 crore ($183.41 million USD) | Rs. 815.04 crore ($177.53 million USD) | Rs. 26.99 crore ($5.88 million USD) |
| Quarter Ending 12/31/2004 | Rs. 891.26 crore ($205.98 million USD) | Rs. 821.53 crore ($189.86 million USD) | Rs. 69.73 crore ($16.12 million USD) |
| Quarter Ending 03/31/2005 | Rs. 953.34 crore ($218.56 million USD) | Rs. 789.94 crore ($181.10 million USD) | Rs. 163.40 crore ($37.46 million USD) |
| Quarter Ending 06/30/2005 | Rs. 1,034.43 crore ($237.75 million USD) | Rs. 904.48 crore ($207.88 million USD) | Rs. 129.95 crore ($29.87 million USD) |
| Quarter Ending 09/30/2005 | Rs. 1,117.27 crore ($254.27 million USD) | Rs. 972.75 crore ($221.38 million USD) | Rs. 144.52 crore ($32.89 million USD) |

---

[1] The financial data set forth in this section is stated in rupees, together with the approximate U.S. dollar conversion. In accordance with the Indian numbering convention, the rupee figures are stated in terms of "lakhs" and "crore." One lakh equals 100,000, and one crore equals 10,000,000.  Put differently, 100,000 rupees (Rs. 100,000) is notated as "Rs. 1 lakh"; 20 million rupees (Rs. 20,000,000) would be notated "Rs. 2 crore."

| Period | Reported Revenues | Actual Revenues | Difference |
|---|---|---|---|
| Quarter Ending 12/31/2005 | Rs. 1,222.63 crore ($272.00 million USD) | Rs. 1,042.81 crore ($231.99 million USD) | Rs. 179.82 crore ($40.00 million USD) |
| Quarter Ending 03/31/2006 | Rs. 1,259.98 crore ($283.27 million USD) | Rs. 1,077.63 crore ($242.27 million USD) | Rs. 182.35 crore ($41.00 million USD) |
| Quarter Ending 06/30/2006 | Rs. 1,386.87 crore ($302.35 million USD) | Rs. 1,330.90 crore ($290.15 million USD) | Rs. 55.97 crore ($12.20 million USD) |
| Quarter Ending 09/30/2006 | Rs. 1,537.70 crore ($334.65 million USD) | Rs. 1,389.04 crore ($302.29 million USD) | Rs. 148.66 crore ($32.35 million USD) |
| Quarter Ending 12/31/2006 | Rs. 1,594.88 crore ($361.57 million USD) | Rs. 1,368.30 crore ($310.20 million USD) | Rs. 226.58 crore ($51.37 million USD) |
| Quarter Ending 03/31/2007 | Rs. 1,779.15 crore ($412.80 million USD) | Rs. 1,450.55 crore ($336.56 million USD) | Rs. 328.60 crore ($76.24 million USD) |
| Quarter Ending 06/30/2007 | Rs. 1,759.08 crore ($433.48 million USD) | Rs. 1,499.22 crore ($369.45 million USD) | Rs. 259.86 crore ($64.04 million USD) |
| Quarter Ending 09/30/2007 | Rs. 1,948.23 crore ($490.12 million USD) | Rs. 1,605.58crore ($403.92 million USD) | Rs. 342.65 crore ($86.20 million USD) |
| Quarter Ending 12/31/2007 | Rs. 2,110.59 crore ($535.55 million USD) | Rs. 1,692.52 crore ($429.47 million USD) | Rs. 418.70 crore ($106.08 million USD) |
| Quarter Ending 03/31/2008 | Rs. 2,319.38 crore ($579.56 million USD) | Rs. 1,798.25 crore ($449.34 million USD) | Rs. 521.13 crore ($130.22 million USD) |
| Quarter Ending 06/30/2008 | Rs. 2,526.90 crore ($588.61 million USD) | Rs. 2,008.96 crore ($467.96 million USD) | Rs. 517.94 crore ($120.65 million USD) |
| Quarter Ending 09/30/2008 | Rs. 2,700.52 crore ($581.38 million USD) | Rs. 2,246.24 crore ($483.58 million USD) | Rs. 454.28 crore ($97.80 million USD) |

88.     Additionally, year after year, Defendants substantially and falsely inflated

Satyam's cash and bank balances.  The following is a comparison of Satyam's actual cash and

bank balances versus the amounts fraudulently misstated by Defendants in public filings in the

United States from 2004 through 2008:

### Satyam Cash and Bank Balances

| Period | Reported Amounts | Actual Amounts | Difference |
|---|---|---|---|
| Fiscal Year Ending 03/31/2004 | Rs. 1,782.90 crore ($410.81 million USD) | Rs. 72.22 crore ($16.64 million (USD) | Rs. 1,710.68 ($394.17 million USD) |
| Fiscal Year Ending 03/31/2005 | Rs. 2,202.07 crore ($504.83 million USD) | Rs. 87.82 crore ($20.13 million USD) | Rs. 2,114.25 crore ($484.70 million USD) |
| Fiscal Year Ending 03/31/2006 | Rs. 2,928.70 crore ($658.43 million USD) | Rs. 181.24 crore ($40.75 million USD) | Rs. 2,747.46 crore ($617.68 million USD) |
| Fiscal Year Ending 03/31/2007 | Rs. 3,781.00 crore ($877.26 million USD) | Rs. 229.57 crore ($53.27 million USD) | Rs. 3,551.43 crore ($824.00 million USD) |
| Fiscal Year Ending 03/31/2008 | Rs. 4,273.99 crore ($1.07 billion USD) | Rs. 136.75 crore ($34.17 million USD) | Rs. 4,137.23 crore ($1.03 billion USD) |
| Quarter Ending 06/30/2008 | Rs. 4,657.39 crore ($1.08 billion USD) | Rs. 118.79 crore ($27.67 million USD) | Rs. 4,538.61 crore ($1.06 billion USD) |
| Quarter Ending 09/30/2008 | Rs. 5,160.34 crore ($1.11 billion USD) | Rs. 139.78 crore ($30.09 million USD) | Rs. 5,020.55 crore ($1.08 billion USD) |

89.    Defendants also fabricated the amount of interest accrued on deposits.

The following is a comparison of Satyam's actual accrued interest on deposits versus the

amounts of accrued interest publicly reported in the United States from 2004 through 2008:

### Satyam Accrued Interest

| Period | Reported Amounts | Actual Amounts | Difference |
|---|---|---|---|
| Fiscal Year Ending 03/31/2004 | Rs. 93.07 crore ($21.44 million USD) | Rs. 1.81 crore ($417,000 USD) | Rs. 91.26 crore ($21.03 million USD) |
| Fiscal Year Ending 03/31/2005 | Rs. 100.05 crore ($22.94 million | Rs. 0.51 crore ($117,000 USD) | Rs. 99.54 crore ($22.82 million |

| Period | Reported Amounts USD) | Actual Amounts | Difference USD) |
|---|---|---|---|
| Fiscal Year Ending 03/31/2006 | Rs. 115.77 crore ($26.03 million USD) | Rs. 4.71 crore ($1.06 million USD) | Rs. 111.06 crore ($24.97 million USD) |
| Fiscal Year Ending 03/31/2007 | Rs. 165.77 crore ($38.46 million USD) | Rs. 2.04 crore ($474,000 USD) | Rs. 163.73 crore ($37.99 million USD) |
| Fiscal Year Ending 03/31/2008 | Rs. 270.01 crore ($67.47 million USD) | Rs. 1.00 crore ($250,000 USD) | Rs. 269.01 crore ($67.22 million USD) |

### 1.    April 30, 2004, Form 6-K

90.    On or about April 30, 2004, Satyam filed with the SEC in the United States a Report of Foreign Private Issuer (Form 6-K) for the quarter ending March 31, 2004, which contains Satyam's Unconsolidated Financial Statements, audited by PwC. These financial statements are signed by Ramalinga Raju, Rama Raju, and Vadlamani on behalf of Satyam's board of directors, and by Gopalakrishnan on behalf of Price Waterhouse. The April 30, 2004, Form 6-K also includes a Report of Independent Auditors, signed by Price Waterhouse, which states that the financial statements contained in the report "present fairly, in all material respects, the financial position of [Satyam]."

91.    The financial statements contained in the April 30, 2004, Form 6-K report a total cash balance on current accounts and deposit accounts of Rs. 1,782.90 crore (roughly $410.81 million USD) as of March 31, 2004, and interest on deposits of Rs. 93.07 crore (roughly $21.44 million USD) for the fiscal year ending March 31, 2004.

92.    The foregoing representations, when made, were false and misleading in that the actual total cash balance on current accounts and deposit accounts as of March 31, 2004, was Rs. 72.22 crore (roughly $16.64 million USD), and the actual interest on deposits for the

fiscal year ending March 31, 2004, was Rs. 1.811 crore (roughly $417,000 USD), as determined by SEBI and/or CBI in their investigation of the Satyam fraud.

93.     In other words, in Satyam's April 30, 2004, Form 6-K, Defendants overstated Satyam's total cash balance on current accounts and deposit accounts by roughly $394.17 million USD and overstated Satyam's annual interest on deposits by roughly $21.03 million USD.

### 2.     June 29, 2004, Form 20-F

94.     On or about June 29, 2004, Satyam filed with the SEC in the United States an Annual Report of Foreign Private Issuer (Form 20-F) for the fiscal year ending March 31, 2004, which contains Satyam's Consolidated Financial Statements, audited by PwC. The June 29, 2004, Form 20-F also includes a Report of Independent Auditors, signed by Price Waterhouse, which states that the financial statements contained in the report "present fairly, in all material respects, the financial position of [Satyam]," and certifications by Rama Raju, as Satyam's CEO, and Vadlamani, as Satyam's CFO.

95.     The financial statements contained in the June 29, 2004, Form 20-F report an inflated figure, $418.86 million USD, for Satyam's total cash balance on current accounts and deposit accounts as of March 31, 2004, similar to that which previously had been reported in the April 30, 2004 Form 6-K.[2]

96.     The foregoing representation, when made, was false and misleading in that, as noted above, the actual total cash balance on current accounts and deposit accounts as of

---

[2] The variance between the figures reported in the April 30, 2004, Form 6-K and the June 29, 2004, Form 20-F is likely attributable to differences between the Indian GAAP and U.S. GAAP standards and/or the rupee-dollar exchange rate used to calculate the figures. Regardless, what is clear is that Defendants overstated Satyam's cash and bank balances by hundreds of millions of dollars. Similar minor discrepancies between the figures referenced in the criminal charge sheet (apparently stated in Indian GAAP terms) and figures reported in Satyam's regulatory filings appear throughout this section.

March 31, 2004, was Rs. 72.22 crore (roughly $16.64 million USD), as determined by SEBI and/or CBI in their investigation of the Satyam fraud.

97.     Thus, in Satyam's June 29, 2004, Form 20-F, Defendants overstated Satyam's total cash balance on current accounts and deposit accounts by roughly $402.22 million USD.

**3.      July 29, 2004, Form 6-K**

98.     On or about July 29, 2004, Satyam filed with the SEC in the United States a Form 6-K for the quarter ending June 30, 2004, which contains Satyam's Unconsolidated Financial Statements, audited by PwC.  These financial statements are signed by Ramalinga Raju, Rama Raju, and Vadlamani on behalf of Satyam's board of directors, and by Gopalakrishnan on behalf of Price Waterhouse.

99.     The financial statements contained in the July 29, 2004, Form 6-K report revenues of Rs. 77,149.83 lakhs (roughly $167.75 million USD) for the quarter ending June 30, 2004.

100.    The July 29, 2004, Form 6-K also includes a press release, dated July 22, 2004, which states, "Revenue from software services at Rs. 771.50 crore was up 7.05% sequentially and 37.85% compared to the same quarter last year.  The revenue was significantly higher than the guidance of Rs. 728 crore to 732 crore," and an "Investor Link" news update, dated July 22, 2004, and signed by Ramalinga Raju, which states, "I am pleased to report that the Company witnessed a 7.05% sequential revenue growth in Q1 on the back of traction with existing customers and a favorable exchange rate scenario.  Revenue for Q1 at Rs. 771.50 crore was better than the guidance of Rs. 732 crore."

101.    The foregoing representations, when made, were false and misleading in that the actual revenues for the quarter ending June 30, 2004, were Rs. 620.67 crore (roughly $134.96 million USD), as determined by SEBI and/or CBI in their investigation of the Satyam fraud.

102.    In other words, in Satyam's July 29, 2004, Form 6-K, Defendants overstated Satyam's quarterly revenues by roughly $32.79 million USD, and, consequently, Satyam's press release and Ramalinga Raju's remarks about Satyam's quarterly revenue growth were false and misleading.

**4.     October 25, 2004, Form 6-K**

103.    On or about October 25, 2004, Satyam filed with the SEC in the United States a Form 6-K for the quarter ending September 30, 2004, which contains Satyam's Unconsolidated Financial Statements, audited by PwC.  These financial statements are signed by Ramalinga Raju, Rama Raju, and Vadlamani on behalf of Satyam's board of directors, and by Gopalakrishnan on behalf of Price Waterhouse.

104.    The financial statements contained in the October 25, 2004, Form 6-K report revenues of Rs. 84,203.06 lakhs (roughly $183.41 million USD) for the quarter ending September 30, 2004.

105.    The October 25, 2004, Form 6-K also includes a press release, dated October 20, 2004, which states, "Revenue from software services at Rs. 848.10 crore was up 9.93% sequentially and 41.71% compared to the same quarter last year.  The revenue was significantly higher than the guidance of Rs. 810 crore," and an "Investor Link" news update, dated October 20, 2004, and signed by Ramalinga Raju, which states, "I am pleased to report that the Company achieved a 9.93% sequential revenue growth in Q2 on the back of continued

business momentum with existing customers.  Revenue for Q2, at Rs. 848.10 crore, was better than the guidance of Rs. 810 crore."

106.    The foregoing representations, when made, were false and misleading in that the actual revenues for the quarter ending September 30, 2004, were Rs. 815.04 crore (roughly $177.53 million USD), as determined by SEBI and/or CBI in their investigation of the Satyam fraud.

107.    In other words, in Satyam's October 25, 2004, Form 6-K, Defendants overstated Satyam's quarterly revenues by roughly $5.88 million USD, and, consequently, Satyam's press release and Ramalinga Raju's remarks about Satyam's quarterly revenue growth were false and misleading.

### 5.    January 27, 2005, Form 6-K

108.    On or about January 27, 2005, Satyam filed with the SEC in the United States a Form 6-K for the quarter ending December 31, 2004, which contains Satyam's Unconsolidated Financial Statements, audited by PwC.  These financial statements are signed by Ramalinga Raju, Rama Raju, and Vadlamani on behalf of Satyam's board of directors, and by Gopalakrishnan on behalf of Price Waterhouse.

109.    The financial statements contained in the January 27, 2005, Form 6-K report revenues of Rs. 89,126.07 lakhs (roughly $205.98 million USD) for the quarter ending December 31, 2004.

110.    The January 27, 2005, Form 6-K also includes a press release, dated January 20, 2005, which states, "Revenue from software services at Rs. 891.26 crore was up 5.09% sequentially and 34.5% compared to the same quarter last year," and an "Investor Link" news update, dated January 20, 2005, and signed by Ramalinga Raju, which states, "I am pleased to report that the company has achieved 8.86% sequential revenue growth in Q3 in US dollar

terms . . . . The growth was driven by a double digit offshore volume increase and stable prices. Revenue for Q3 at Rs. 891.26 crore was better than the guidance of Rs. 886 crore."

111.    The foregoing representations, when made, were false and misleading in that the actual revenues for the quarter ending December 31, 2004, were Rs. 821.53 crore (roughly $189.86 million USD), as determined by SEBI and/or CBI in their investigation of the Satyam fraud.

112.    In other words, in Satyam's January 27, 2005, Form 6-K, Defendants overstated Satyam's quarterly revenues by roughly $16.12 million USD, and, consequently, Satyam's press release and Ramalinga Raju's remarks about Satyam's quarterly revenue growth were false and misleading.

**6.    April 26, 2005, Form 6-K**

113.    On or about April 26, 2005, Satyam filed with the SEC in the United States a Form 6-K for the quarter ending March 31, 2005, which contains Satyam's Unconsolidated Financial Statements, audited by PwC.  These financial statements are signed by Ramalinga Raju, Rama Raju, and Vadlamani on behalf of Satyam's board of directors, and by Gopalakrishnan on behalf of Price Waterhouse.  The April 26, 2005, Form 6-K also includes a Report of Independent Registered Public Accounting Firm, signed by Price Waterhouse, which states that the financial statements contained in the report "present fairly, in all material respects, the financial position of [Satyam]."

114.    The financial statements contained in the April 26, 2005, Form 6-K report a total cash balance on current accounts and deposit accounts of Rs. 2,202.07 crore (roughly $504.83 million USD) as of March 31, 2005, and interest on deposits of Rs. 100.05 crore (roughly $22.94 million USD) for the fiscal year ending March 31, 2005.

115.    The foregoing representations, when made, were false and misleading in that the actual total cash balance on current accounts and deposit accounts as of March 31, 2005, was Rs. 87.82 crore (roughly $20.13 million USD), and the actual interest on deposits for the fiscal year ending March 31, 2005, was Rs. 0.51 crore (roughly $117,000 USD), as determined by SEBI and/or CBI in their investigation of the Satyam fraud.

116.    In other words, in Satyam's April 26, 2005, Form 6-K, Defendants overstated Satyam's total cash balance on current accounts and deposit accounts by roughly $484.70 million USD and overstated Satyam's annual interest on deposits by roughly $22.82 million USD.

117.    The April 26, 2005, Form 6-K also includes a summary of the audited financial results for the quarter ending March 31, 2005, which reports, among other things, quarterly revenues of Rs. 95,336.40 lakhs (roughly $218.56 million USD).

118.    The foregoing representation, when made, was false and misleading in that the actual revenues for the quarter ending March 31, 2005, were Rs. 789.94 crore (roughly $181.10 million USD), as determined by SEBI and/or CBI in their investigation of the Satyam fraud.

119.    Thus, in Satyam's April 26, 2005, Form 6-K, Defendants overstated Satyam's quarterly revenues by roughly $37.46 million USD.

**7.    April 28, 2005, Form 20-F**

120.    On or about April 28, 2005, Satyam filed with the SEC in the United States a Form 20-F for the fiscal year ending March 31, 2005. The April 28, 2005, Form 20-F incorporates by reference the falsified financial statements attached to the April 26, 2005, Form 6-K, discussed above, and reports an inflated figure, $541.44 million USD, for Satyam's total

cash balance on current accounts and deposit accounts as of March 31, 2005, similar to that which previously had been reported in the April 26, 2005, Form 6-K.

121.    The foregoing representation, when made, was false and misleading in that, as noted above, the actual total cash balance on current accounts and deposit accounts as of March 31, 2005, was Rs. 87.82 crore (roughly $20.13 million USD), as determined by SEBI and/or CBI in their investigation of the Satyam fraud.

122.    Thus, in Satyam's April 28, 2005, Form 20-F, Defendants overstated Satyam's total cash balance on current accounts and deposit accounts by roughly $521.31 million USD.

**8.    July 27, 2005, Form 6-K**

123.    On or about July 27, 2005, Satyam filed with the SEC in the United States a Form 6-K for the quarter ending June 30, 2005, which contains Satyam's Unconsolidated Financial Statements, audited by PwC. These financial statements are signed by Ramalinga Raju, Rama Raju, and Vadlamani on behalf of Satyam's board of directors, and by Gopalakrishnan on behalf of Price Waterhouse.

124.    The financial statements contained in the July 27, 2005, Form 6-K report revenues of Rs. 103,443.2 lakhs (roughly $237.75 million USD) for the quarter ending June 30, 2005.

125.    The July 27, 2005, Form 6-K also includes a press release, dated July 21, 2005, which states, "Revenue from software services stood at US$ 246.04 mn, up 9.4% sequentially and 40.6% compared to the same quarter last year," and an "Investor Link" news update, dated July 21, 2005, and signed by Ramalinga Raju, which states, "I am pleased to report

that the Company has recorded revenue of Rs. 1058.71 crore and an EPS of Rs. 5.95 in Q1, as per Indian GAAP financials.  Revenue grew by 8.97% sequently [sic] and 35.7% YoY."

126.    The foregoing representations, when made, were false and misleading in that the actual revenues for the quarter ending June 30, 2005, were Rs. 904.48 crore (roughly $207.88 million USD), as determined by SEBI and/or CBI in their investigation of the Satyam fraud.

127.    In other words, in Satyam's July 27, 2005, Form 6-K, Defendants overstated Satyam's quarterly revenues by roughly $29.87 million USD, and, consequently, Satyam's press release and Ramalinga Raju's remarks about Satyam's quarterly revenue growth were false and misleading.

### 9.    October 27, 2005, Form 6-K

128.    On or about October 27, 2005, Satyam filed with the SEC in the United States a Form 6-K for the quarter ending September 30, 2005, which contains Satyam's Unconsolidated Financial Statements, audited by PwC.  These financial statements are signed by Ramalinga Raju, Rama Raju, and Vadlamani on behalf of Satyam's board of directors, and by Gopalakrishnan on behalf of Price Waterhouse.

129.    The financial statements contained in the October 27, 2005, Form 6-K report revenues of Rs. 111,727.41 lakhs (roughly $254.27 million USD) for the quarter ending September 30, 2005.

130.    The October 27, 2005, Form 6-K also includes an "Investor Link" news update, dated October 20, 2005, and signed by Ramalinga Raju, which states, "I am pleased to report that Q2 was yet another quarter of high single digit, broad based growth, continuing the consistent performance witnessed over the last several quarters.  The Company reported a

revenue of Rs. 1,154.97 crore, a sequential growth of 9.09% as per Indian GAAP consolidated financials."

131.    The foregoing representations, when made, were false and misleading in that the actual revenues for the quarter ending September 30, 2005, were Rs. 972.75 crore (roughly $221.38 million USD), as determined by SEBI and/or CBI in their investigation of the Satyam fraud.

132.    In other words, in Satyam's October 27, 2005, Form 6-K, Defendants overstated Satyam's quarterly revenues by roughly $32.89 million USD, and, consequently, Ramalinga Raju's remarks about Satyam's quarterly revenue growth were false and misleading.

**10.    January 27, 2006, Form 6-K**

133.    On or about January 27, 2006, Satyam filed with the SEC in the United States a Form 6-K for the quarter ending December 31, 2005, which contains Satyam's Unconsolidated Financial Statements, audited by PwC.  These financial statements are signed by Ramalinga Raju, Rama Raju, and Vadlamani on behalf of Satyam's board of directors, and by Gopalakrishnan on behalf of Price Waterhouse.

134.    The financial statements contained in the January 27, 2006, Form 6-K report revenues of Rs. 122,263.17 lakhs (roughly $272.00 million USD) for the quarter ending December 31, 2005.

135.    The January 27, 2006, Form 6-K also includes an "Investor Link" news update, dated January 20, 2006, and signed by Ramalinga Raju, which states, "I am pleased to report that our performance in Q3 exceeded the guidance.  As per Indian GAAP consolidated financials, the Company reported a revenue of Rs. 1,265.3 crore, a sequential growth of 9.6%."

136.    The foregoing representations, when made, were false and misleading in that the actual revenues for the quarter ending December 31, 2005, were Rs. 1,042.81 crore (roughly $231.99 million USD), as determined by SEBI and/or CBI in their investigation of the Satyam fraud.

137.    In other words, in Satyam's January 27, 2005, Form 6-K, Defendants overstated Satyam's quarterly revenues by roughly $40.00 million USD, and, consequently, Ramalinga Raju's remarks about Satyam's quarterly revenue growth were false and misleading.

**11.    April 28, 2006, Form 6-K**

138.    On or about April 28, 2006, Satyam filed with the SEC in the United States a Form 6-K for the quarter ending March 31, 2006, which contains Satyam's Unconsolidated Financial Statements, audited by PwC.  These financial statements are signed by Ramalinga Raju, Rama Raju, and Vadlamani on behalf of Satyam's board of directors, and by Gopalakrishnan on behalf of Price Waterhouse.

139.    The financial statements contained in the April 28, 2006, Form 6-K report a total cash balance on current accounts and deposit accounts of Rs. 2,928.70 crore (roughly $658.43 million USD) as of March 31, 2006, interest on deposits of Rs. 115.77 crore (roughly $26.03 million USD) for the fiscal year ending March 31, 2006.

140.    The foregoing representations, when made, were false and misleading in that the actual total cash balance on current accounts and deposit accounts as of March 31, 2006, was Rs. 181.24 crore (roughly $40.75 million USD), and the actual interest on deposits for the fiscal year ending March 31, 2006, was Rs. 4.711 crore (roughly $1.06 million USD), as determined by SEBI and/or CBI in their investigation of the Satyam fraud.

141.    In other words, in Satyam's April 28, 2006, Form 6-K, Defendants overstated Satyam's total cash balance on current accounts and deposit accounts by roughly

$617.68 million USD, and overstated Satyam's annual interest on deposits by roughly $24.97 million USD.

142.    The April 28, 2006, Form 6-K also includes a summary of the audited financial results for the quarter ending March 31, 2006, which reports, among other things, quarterly revenues of Rs. 1,259.97 crore (roughly $283.27 million USD.)

143.    The foregoing representation, when made, was false and misleading in that the actual revenues for the quarter ending March 31, 2006, were Rs. 1,077.63 crore (roughly $242.27 million USD), as determined by SEBI and/or CBI in their investigation of the Satyam fraud.

144.    Thus, in Satyam's April 28, 2006, Form 6-K, Defendants overstated Satyam's quarterly revenues by roughly $41.00 million USD.

### 12.    April 28, 2006, Form 20-F

145.    On or about April 28, 2006, Satyam filed with the SEC in the United States a Form 20-F for the fiscal year ending March 31, 2006, which contains Satyam's Consolidated Financial Statements, audited by PwC.  The April 28, 2006, Form 20-F also includes a Report of Independent Registered Public Accounting Firm, signed by Price Waterhouse, which states that the financial statements contained in the report "present fairly, in all material respects, the financial position of [Satyam]," and certifications by Rama Raju, as Satyam's CEO, and Vadlamani, as Satyam's CFO.

146.    The financial statements contained in the April 28, 2006, Form 20-F report an inflated figure, $696.5 million USD, for Satyam's total cash balance on current accounts and deposit accounts as of March 31, 2006, similar to that which previously had been reported in the April 28, 2006, Form 6-K.

147.    The foregoing representation, when made, was false and misleading in that, as noted above, the actual total cash balance on current accounts and deposit accounts as of March 31, 2006, was Rs. 181.24 crore (roughly $40.75 million USD), as determined by SEBI and/or CBI in their investigation of the Satyam fraud.

148.    Thus, in Satyam's April 28, 2006, Form 20-F, Defendants overstated Satyam's total cash balance on current accounts and deposit accounts by roughly $655.75 million USD.

**13.    July 28, 2006, Form 6-K**

149.    On or about July 28, 2006, Satyam filed with the SEC in the United States a Form 6-K for the quarter ending June 30, 2006, which contains Satyam's Unconsolidated Financial Statements, audited by PwC.  These financial statements are signed by Ramalinga Raju, Rama Raju, and Vadlamani on behalf of Satyam's board of directors, and by Gopalakrishnan on behalf of Price Waterhouse.

150.    The financial statements contained in the July 28, 2006, Form 6-K report revenues of Rs. 1,386.86 crore (roughly $302.35 million USD) for the quarter ending June 30, 2006.

151.    The July 28, 2006, Form 6-K also includes an "Investor Link" news update, dated July 21, 2006, and signed by Ramalinga Raju, which states, "In Q1, the company has reported a revenue of Rs. 1443 crore, a sequential growth of 9.84%, as per Indian GAAP consolidated financials," and, "The revenue growth has been fueled by a 7.2% increase in volumes and higher contribution from offshore, both critical initiatives that we focus on."

152.    The foregoing representations, when made, were false and misleading in that the actual revenues for the quarter ending June 30, 2006, were Rs. 1,330.90 crore (roughly

$290.15 million USD), as determined by SEBI and/or CBI in their investigation of the Satyam fraud.

153.    In other words, in Satyam's July 28, 2006, Form 6-K, Defendants overstated Satyam's quarterly revenues by roughly $12.20 million USD, and, consequently, Ramalinga Raju's remarks about Satyam's quarterly revenue growth were false and misleading.

**14.    October 27, 2006, Form 6-K**

154.    On or about October 27, 2006, Satyam filed with the SEC in the United States a Form 6-K for the quarter ending September 30, 2006, which contains Satyam's Unconsolidated Financial Statements, audited by PwC.  These financial statements are signed by Ramalinga Raju, Rama Raju, and Vadlamani on behalf of Satyam's board of directors, and by Gopalakrishnan on behalf of Price Waterhouse.

155.    The financial statements contained in the October 27, 2006, Form 6-K report revenues of Rs. 1,537.71 crore (roughly $334.65 million USD) for the quarter ending September 30, 2006.

156.    The October 27, 2006, Form 6-K also includes an "Investor Link" news update, dated October 20, 2006, and signed by Ramalinga Raju, which states, "A noteworthy highlight of a positive performance in Q2 is the 11% sequential growth in revenue which not only betters the guidance substantially but also is the highest growth witnessed by the company in the last five years."

157.    The foregoing representations, when made, were false and misleading in that the actual revenues for the quarter ending September 30, 2006, were Rs. 1,389.04 crore (roughly $302.29 million USD), as determined by SEBI and/or CBI in their investigation of the Satyam fraud.

158.    In other words, in Satyam's October 27, 2006, Form 6-K, Defendants overstated Satyam's quarterly revenues by roughly $32.36 million USD, and, consequently, Ramalinga Raju's remarks about Satyam's quarterly revenue growth were false and misleading.

**15.    January 25, 2007, Form 6-K**

159.    On or about January 25, 2007, Satyam filed with the SEC in the United States a Form 6-K for the quarter ending December 31, 2006, which contains Satyam's Unconsolidated Financial Statements, audited by PwC.  These financial statements are signed by Ramalinga Raju, Rama Raju, and Vadlamani on behalf of Satyam's board of directors, and by Gopalakrishnan on behalf of Price Waterhouse.

160.    The financial statements contained in the January 25, 2007, Form 6-K report revenues of Rs. 1,594.87 crore (roughly $361.57 million USD) for the quarter ending December 31, 2006.

161.    The January 25, 2007, Form 6-K also includes a press release, dated January 19, 2007, which states, "Revenue from software services stood at US$ 375.6 mn., up 6.7% sequentially and 33.3% compared to the same quarter last year," and an "Investor Link" news update, dated January 19, 2007, and signed by Ramalinga Raju, which states, "I am pleased to report that the company has achieved 7.7% sequential revenue growth in Q3 in US$ terms."

162.    The foregoing representations, when made, were false and misleading in that the actual revenues for the quarter ending December 31, 2006, were Rs. 1,368.30 crore (roughly $310.20 million USD), as determined by SEBI and/or CBI in their investigation of the Satyam fraud.

163.    In other words, in Satyam's January 25, 2007, Form 6-K, Defendants overstated Satyam's quarterly revenues by roughly $51.37 million USD, and, consequently,